UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHARON LESLIE BROWN,

        Plaintiff,

-against-

GOOGLE, et al.,

        Defendants.

1:24-CV-7018 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff Sharon Leslie Brown, of Jamaica, Queens County, New York, who is appearing *pro se*, filed this action invoking the court's federal question jurisdiction. She names as defendants the following entities: (1) Google; (2) DistroKid; (3) Spotify; (4) Twitter; (5) YouTube; (6) TikTok; (7) Facebook; (8) "All Social Media Platforms"; (9) Lulu.com; (10) Ning.com; (11) "Big Tech"; (12) Boomdizzle; (13) Deezer; (14) Apple; (15) Tidal; (16) iTunes; and (17) Boomplay. Plaintiff states that the federal constitutional or federal statutory bases for her claims are: "freedom of speech, freedom of religion, freedom of expression, freedom to be a capitalist, pursuit of happiness . . . , civil rights, intellectual property rights[,] all constitutional rights have been trampled [*sic*]." (ECF 1, at 2.) In her complaint, Plaintiff seems to seek one billion dollars in damages as well as the following relief: "ideas songs concepts and more any and all just and fair relief pain and suffering, mental anguish any and all torts applicable, having to sue for things that are obvious to perpetrators and loss of business, stature, awards, recognitions my religious content desecrated by plagiarist etc [*sic*]." (*Id.* at 6.)

    Plaintiff filed with her complaint an order to show cause for a preliminary injunction and a temporary restraining order ("OTSC"). (ECF 4.) In that OTSC, Plaintiff asked the court for immediate relief that would enjoin the defendants from "removing music from [her] accounts,

locking accounts, closing accounts, malicious copyright violating actions, assisting in theft of intellectual property etc., hindering freedom of speech religion and all constitutional rights [*sic*]." (*Id.* at 1.) Plaintiff also asked for immediate "access to all [her] accounts closed or open." (*Id.*) She further asked the court to enjoin any of the defendants' "actions to delay [her] work to further other artists, accounts, users monetarily, views, likes, comments, followers [*sic*]." (*Id.* at 2.) In a brief order dated September 26, 2024, the Court denied Plaintiff's first OTSC, indicating that it would issue an explanatory order at a later date. (ECF 8.)

Plaintiff also filed a motion with her complaint in which she asks the Court to enjoin the defendants from "remov[ing] [her] music from accounts, locking accounts, closing accounts, malicious copyright violating actions, assisting in theft of intellectual property etc, hindering freedom of speech religion and all constitutional rights [*sic*]" ("motion"). (ECF 5.) She further seeks "access to all [her] accounts closed or open." (*Id.*) That motion is pending.

After the Court denied Plaintiff's first OTSC, Plaintiff, on February 21, 2025, under the name "Sharon Jeter," filed a second OTSC in this action, and in other actions that she has brought in this court, in which she seems to ask the Court to reopen "cases remaining closed without cause or having been heard or not having discovery in each case [*sic*]." (ECF 9, at 1.) In her second OTSC, Plaintiff asserts that the defendants "have evidence they stole or used to commit crimes and torts against [her], America, [and] Israel," and that they are "stopping [her] days in court." (*Id.*) She also seems to seek, in her second OTSC, injunctive relief that would allow "discovery hearings, [her] day in court, [and would allow her to] fac[e] those [she] accused of torts [and] crimes, [to] get[] justice, . . . [and to] face those [she] ha[s] accused so [all] of [them] can be heard in court." (*Id.*) Plaintiff further asks the Court to "stop them from possessing [her] personal property[,] intellectual and otherwise." (*Id.*)

On April 23, 2025, Plaintiff filed a notice of appeal,[1] a motion for leave to proceed *in forma pauperis* ("IFP") on appeal, an application to appeal IFP, a motion for an extension of time to file a notice of appeal under Rule 4(a)(5) of the Federal Rules of Appellate Procedure, and what appears to be her third OTSC. (ECF 10-12.) In her third OTSC, Plaintiff asks the Court to enjoin:

> Twitter, Google, DistroKid, Lulu.com, etc. . . . from burying [her] clickable links to [her] books, music, intellectual property[,] content[,] etc. [;] [to] stop removing [her] links with [her] books, music[,] [and] intellectual property[;] [and] inhibiting[,] suppressing, stealing, [and] redirecting [her] sales/clicks [and] withholding [her] revenue for clicks and views etc. [she] did get.

(ECF 12, at 1.) She also asks "to be reimbursed as well as receive royalties, monies for writing articles[,] [and] everything advertised by Twitter[,] X, Lulu.com, [D]istroKid." (*Id.* at 2.)

By order dated September 19, 2024, the Court granted Plaintiff's request to proceed IFP, that is, without prepayment of fees. For the reasons set forth below, the Court: (1) explains why it denied Plaintiff's first OTSC, and denies her second and third OTSCs; (2) denies Plaintiff's motion for an extension of time to file a notice of appeal, motion for leave to proceed IFP on appeal, and application to appeal IFP; and (3) dismisses this action, but grants Plaintiff 30 days' leave to replead certain claims in an amended complaint.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see*

---

[1] Plaintiff's notice of appeal informed the Court of Plaintiff's intent to appeal the Court's September 26, 2024 order denying her first OTSC. (ECF 11, at 1.) That appeal appears to have been dismissed, effective August 15, 2025, due to Plaintiff's failure to pay the fees or seek IFP to bring her appeal in the Court of Appeals. . *See Brown v. Google LLC*, No. 25-1029 (2d Cir. July 25, 2025) (effective Aug. 15, 2025).

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

**BACKGROUND**

Plaintiff alleges the following in her complaint's statement of claim:

> DistroKid – took my money for distribution deal fee then refused to distribute many of my projects for no reason. [It] made my albums late because [its] website wouldn't load properly. When it did[,] [DistroKid] refused good projects superstitiously or to help further other artist[s]. When I added my music to DistroKid competitions between artists[,] [i]t was never available to [the] public to vote on for feature if it won [the] vote. I checked for years. [DistroKid] removed my music for no reason without warning. I need it put back on social media platforms and I need access to those accounts. [G]oogle searches allow[] others to benefit from my work instead of me. Others show up when I put the name[s] of easily identifiable unique works. All companies[] remove good content without cause, they aid plagiarists, cause monopol[ies], [and] others get my views, likes, reposts, subscriptions, fans, friends, followers, boost[s] in analytics that I lawfully own and garnered. [*sic*]

(ECF 1, at 5-6.)

In the injuries section of her complaint, Plaintiff alleges the following: "I've lost money from investments in making albums, equipment, office material, likes, shares, views, reposts, subscription fees, fans, friends, followers, analytics skewed [and] suppressed, money and earnings and opportunities past[,] present[,] [and] future to earn[,] make[,] produce[,] write[,] act[,] etc. in projects. [*sic*]" (*Id.* at 6.)

In the declaration Plaintiff filed in support of her motion (ECF 6), which the Court construes as a supplement to the complaint, she asserts the following:

> My songs were manipulated on various websites making [them] inaccessible even when visible or often not visible[.] [G]oogle is [doing this] either by request from . . . plagiarist[s], or of [its] own accord [it is] scrubbing my [G]oogle search of links to my content and making it difficult to find my work or links to my works on the internet. [It] also show[s] other people instead of my work when someone searches for me on the internet. For instance[,] [i]f you search for a title of my song or for my account name[,] many people show up in the search as if they were me or the person the search was making a query for. Then i[t] leads people to [others'] accounts and they get my views, likes, comments, friends, subscribers, shares, reposts, monetary gain, standing in the compiled analytics for website traffic etc. . . . There are artists who have released songs after I have with the same name or similar name and topic and sometimes beat and lyrics, and my songs are taken down and the plagiarist artist[s] use[] my idea, intellectual

5

property, impeccable timing for what should be released now or at certain times, my creativity, my style, color scheme etc. These skills are very costly and original and they steal my intellectual property, artistry and views[,] like[s], comments, shares, repost[s], streams, money, followers, fans, subscriptions, opportunity[ies] for other projects by people who see my content. Example: My song ["]Heterosexual["] was on Spotify. [Spotify] took it down because [D]istroKid and later an "artist" released a song ["]Heterosexuality["] to garner fans and the topic of my song . . . it's brand confusion. [*sic*]

(*Id.* at 1-3.)

## DISCUSSION

The Court understands that Plaintiff is asserting claims in which she seeks the criminal prosecution of the defendants. The Court also understands that Plaintiff is asserting claims of federal constitutional violations, which the Court construes as brought under 42 U.S.C. § 1983. The Court further understands that Plaintiff asserts claims of copyright infringement and trademark infringement under federal law, as well as claims under state law. Finally, with respect to Plaintiff's OTSCs, Plaintiff seems to seek immediate injunctive relief, notwithstanding her failure to satisfy the pleading requirements of Rule 8 to plausibly allege facts to state certain claims under federal law, and to satisfy the subject matter jurisdiction requirements as to any claims she raises under state law, as specified below.

### A.     Plaintiff's OTSCs

The Court has denied Plaintiff's first OTSC, in which Plaintiff sought immediate injunctive relief in this action, and the Court must deny Plaintiff's second and third OTSCs, in which she seems to seek immediate injunctive relief as well,[2] because of the deficiencies discussed below. To obtain such relief, Plaintiff must show: (1) that she is likely to suffer irreparable harm and (2) either (a) that she has a likelihood of success on the merits of her case

---

[2] The Court will address, in this order, Plaintiff's second OTSC only inasmuch as Plaintiff seeks immediate injunctive relief in this action.

or (b) has raised sufficiently serious questions going to the merits to make them a fair ground for litigation and that there is a balance of hardships tipping decidedly in her favor. *See UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (citation and internal quotation marks omitted); *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

Because of the deficiencies discussed below, none of Plaintiff's submissions filed in this action demonstrate: (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in Plaintiff's favor. These deficiencies are the bases for the Court's previous denial of Plaintiff's first OTSC, and why the Court now denies her second and third OTSCs.

**B.     Private prosecution**

Plaintiff seems to seek the criminal prosecution of at least some of the defendants. The Court must dismiss the claims seeking such relief. Plaintiff cannot initiate a criminal prosecution in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against anyone because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, because Plaintiff lacks standing to cause the federal criminal prosecution of others, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 618-19 (1973), the Court dismisses, for lack of subject matter jurisdiction, all claims in which Plaintiff seeks the federal criminal prosecution of anyone, including the defendants, *see* Fed. R. Civ. P. 12(h)(3); *Mahon v.*

7

*Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [his] claim." (internal quotation marks and citation omitted)).

C.   **Claims under 42 U.S.C. § 1983**

The Court construes Plaintiff's claims that defendants violated her federal constitutional rights as brought under 42 U.S.C. § 1983. The Court must, however, dismiss those claims. A claim for relief under Section 1983 must allege facts showing that the defendants acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a viable claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires *both* . . . the exercise of some right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor." (internal quotation marks and citation omitted, emphasis in original)). Private entities are not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties . . . ." (internal quotation marks and citations omitted)).

Plaintiff has alleged no facts showing how any of the defendants—all of which are private entities—functioned as state actors when they allegedly violated Plaintiff's federal constitutional rights. The Court therefore dismisses Plaintiff's claims of federal constitutional

violations under Section 1983 for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**D.   Copyright infringement**

To the extent that Plaintiff asserts claims of copyright infringement against any of the defendants, under the federal Copyright Act, 17 U.S.C. § 501, *et seq.*, the Court must dismiss these claims. "To state a claim for copyright infringement, a plaintiff must allege 'both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant.'" *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (citation omitted). The registration of a plaintiff's copyright with the United States Copyright Office is not required for a work to obtain copyright protection. *See* 17 U.S.C. § 408(a) ("[R]egistration is not a condition of copyright protection."). Nevertheless, preregistration or registration of a copyright with the United States Copyright Office is a precondition for bringing a copyright infringement action in federal court. The Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 158 (2010) (holding that copyright registration is a condition that a plaintiff "must satisfy before filing an infringement claim and invoking the [Copyright] Act's remedial provisions"); *Newton v. Penguin/Berkley Publ'g USA*, No. 13-CV-1283 (CM), 2014 WL 61232, at *4 (S.D.N.Y. Jan. 6, 2014) ("The Supreme Court has held that this provision imposes a 'precondition' to filing a claim for copyright infringement.").

Plaintiff alleges nothing to suggest that she owns any copyrights that are preregistered or registered with the United States Copyright Office with respect to any of the songs or other works that she mentions or alludes to in her complaint, OTSCs, motion, or declaration in support of her motion. It is also unclear from those submissions which, if any, of the defendants

allegedly infringed any preregistered or registered copyrights Plaintiff may own, and how they did so. The Court therefore dismisses Plaintiff's claims of copyright infringement for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead her federal law claims of copyright infringement in an amended complaint in which she provides facts showing that: (1) she owns copyrights for the works that are the bases for her federal law claims of copyright infringement; (2) those copyrights are preregistered or registered with the United States Copyright Office; and (3) the defendants named in the amended complaint infringed on those copyrights.

**E.     Trademark infringement**

Plaintiff may also be attempting to assert claims of trademark infringement, under the Federal Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, which is also known as the Lanham Act. To state such a claim, "a plaintiff 'must allege sufficient facts to establish: (1) that the plaintiff's mark is entitled to protection, and (2) that the defendant's use of [the] mark is likely to cause consumers confusion as to the origin or sponsorship of [its] goods' [or services]." *Adidas Am., Inc. v. Thom Brown Inc.*, 599 F. Supp. 3d 151, 158 (S.D.N.Y. 2022) (citation omitted, second alteration in original). For the purposes of the Lanham Act, "[t]he term 'mark' includes any trademark, service mark, collective mark, or certification mark." 15 U.S.C. § 1127. The statute defines those terms in the following manner:

> The term "trademark" includes any word, name, symbol, or device, or any combination thereof—
>
> (1) used by a person, or
>
> (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter,
>
> to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

10

The term "service mark" means any word, name, symbol, or device, or any combination thereof—

(1) used by a person, or

(2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter,

to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown. Titles, character names, and other distinctive features of radio or television programs may be registered as service marks notwithstanding that they, or the programs, may advertise the goods of the sponsor.

The term "certification mark" means any word, name, symbol, or device, or any combination thereof—

(1) used by a person other than its owner, or

(2) which its owner has a bona fide intention to permit a person other than the owner to use in commerce and files an application to register on the principal register established by this chapter,

to certify regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of such person's goods or services or that the work or labor on the goods or services was performed by members of a union or other organization.

The term "collective mark" means a trademark or service mark—

(1) used by the members of a cooperative, an association, or other collective group or organization, or

(2) which such cooperative, association, or other collective group or organization has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter,

and includes marks indicating membership in a union, an association, or other organization.

*Id.* "A certificate of registration with the [United States Patent and Trademark Office] is *prima facie* evidence that the mark is registered and valid (*i.e.*, protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Lane Capital*

*Mgmt. Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) (citing 15 U.S.C. § 1115(a)).

Plaintiff alleges nothing to suggest that she owns any sort of mark, as defined in the Lanham Act, that is entitled to protection, or that any of the defendants' use of such mark is likely to cause consumers confusion as to the origin or sponsorship of that defendant's goods or services. The Court therefore dismisses Plaintiff's claims of trademark infringement, under the Lanham Act, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims in an amended complaint in which she alleges facts to state such a claim, as specified above.

**F.     Claims under state law**

The focus of Plaintiff's complaint, OTSCs, motion, and declaration in support of that motion does not seem to be any claims under federal law, including any claims of federal constitutional violations, claims of copyright infringement, or claims of trademark infringement. Rather, the focus of Plaintiff's submissions appears to be claims under state law, which the Court understands as brought, alternatively, under the court's supplemental jurisdiction or under the court's original diversity jurisdiction.

If Plaintiff fails to file an amended complaint in response to this order, or if she files an amended complaint and asserts claims under federal law, as well as claims under state law under the court's supplemental jurisdiction, and should the Court dismiss her federal law claims, the Court will decline to consider, under the court's supplement jurisdiction, her claims under state law. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of [supplemental] jurisdiction" (footnote omitted)).

If, however, Plaintiff alleges facts in her amended complaint showing that the court has original diversity jurisdiction to consider her claims under state law, the court must consider those claims. *See* 28 U.S.C. 1332(a). To establish diversity jurisdiction, a plaintiff must first allege that she and the defendants are citizens of different States. *See* § 1332(a)(1); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State."). For diversity purposes, an individual is a citizen of the State where she is domiciled, which is defined as the place where the individual "has [her] true fixed home . . . and to which, whenever [s]he is absent, [s]he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has but one domicile." *Id.* A corporation is, however, a citizen "of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (a corporation's principal place of business is its "nerve center," usually its main headquarters). For purposes of diversity jurisdiction, a limited liability company (an "LLC") is deemed to be a citizen of each State of which its members are citizens.[3] *See Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012).

There is a second component of diversity jurisdiction—the amount in controversy must be in excess of the sum or value of $75,000. *See* § 1332(a). The sum claimed by a plaintiff will

---

[3] Because a limited liability company is not a corporation, the rule for determining the citizenship of a corporation is inapplicable to determining the citizenship of a limited liability company. *See Ali v. Am. Univ. of Antigua, Inc.*, No. 1:25-CV-2065 (LTS), 2025 WL 897043, at *4 (S.D.N.Y. Mar. 24, 2025).

13

control if it the claim of value made in good faith. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). The Court can dismiss a diversity action for failing to plead that the amount in controversy exceeds the sum or value of $75,000, but only if there is "a legal certainty from the complaint that the plaintiff cannot recover sufficient damages to invoke [diversity] jurisdiction." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982); *see Ochoa v. Interbrew Am., Inc.*, 999 F.2d 626, 629 (2d Cir. 1993) ("[I]n determining whether a challenged jurisdictional amount has been met, district courts are permitted only to assess the allegations in a complaint and not the validity of any asserted defenses."). "A plaintiff seeking to invoke diversity jurisdiction 'cannot[,] [however,] meet [her] burden of proof with mere conclusory allegations of indirect or speculative value.'" *Chavez v. Maker*, No. 1:18-CV-7965 (RA) (GWG), 2019 WL 4926348, at *4 (S.D.N.Y. Oct. 7, 2019) (citation omitted), *report & recommendation adopted sub nom.*, *Chavez v. Wylie*, No. 18-CV-7965 (RA), 2019 WL 6873806 (S.D.N.Y. Dec. 17, 2019), *appeal dismissed*, No. 20-383, 2020 WL 4332758 (2d Cir. May 28, 2020); *Weir v. Cenlar FSB*, No. 7:16-CV-8650 (CS), 2018 WL 3443173, at *12 (S.D.N.Y. July 17, 2018) (reasoning that "the jurisdictional amount, like any other factual allegation, ought not to receive the presumption of truth unless it is supported by facts rendering it plausible" (citation omitted)).

Plaintiff, who alleges that she is a citizen of the State of New York, and that she resides in Jamaica, Queens County, New York, sues entities that, she alleges, are all incorporated within that State and have their principal places of business within that State as well. (ECF 1, at 3.) If this is true with respect to at least one of the defendants named, then that defendant is also a citizen of the State of New York, and the parties are not diverse for the purposes of the court's diversity jurisdiction. *Schacht*, 524 U.S. at 388 ("A case falls within the federal district court's

14

'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, *only if there is no plaintiff and no defendant who are citizens of the same State*." (emphasis added)). It does not appear, however, that all of the defendants are corporations—some appear to be limited liability companies—or that they are all citizens of the State of New York. *See, e.g.*, Statement Pursuant to Federal Rule of Civil Procedure 7.1 at 2, *Phillips v. Google LLC*, No. 1:24-CV-5742 (VF) (S.D.N.Y. 2024) (stating that "[t]he sole member of Defendant Google LLC is XXVI Holdings Inc., which is a company incorporated in Delaware with its principal place of business in Mountain View, California. Accordingly, Google LLC is a citizen of Delaware and California."); *Doeman Music. Grp. Media & Photography LLC v. DistroKid, LLC*, No. 1:23-CV-4776 (MMG), 2024 WL 4349480, at *5 (S.D.N.Y. Sept. 30, 2024) (noting that DistroKid, a limited liability company, did not contest the plaintiff's assertion that its members are citizens of Delaware, Massachusetts, or New York); *Romero v. Meta Platforms Inc.*, No. 7:23-CV-3306 (TMC) (KFM), 2024 WL 1554826, at *1 (D.S.C. Mar. 14, 2024) (noting that Meta Platforms, Inc. operates Facebook, and is a Delaware corporation with its principal place of business in Menlo, Park, California), *report & recommendation adopted*, 2024 WL 3466403 (D.S.C. July 19, 2024), *aff'd*, No. 24-1729, 2024 WL 5200156 (4th Cir. Dec. 23, 2024), *cert. denied*, 145 S. Ct. 1972 (2025); *Maoz v. Shop*, No. 1:22-CV-2039 (LTS), 2022 WL 1063152, at *3 (S.D.N.Y. Apr. 5, 2022) ("Apple, because it is incorporated in California, where it maintains its principal place of business . . . is a citizen of California for diversity purposes.") (citation omitted)); *Day v. TikTok, Inc.*, No. 21-CV-50129 (PGR), 2022 WL 595745, at *1 (N.D. Ill. Feb. 28, 2022) (noting that TikTok, Inc., is "a California corporation with its principal place of business in California"); *Eight Mile Style, LLC v. Spotify USA Inc.*, No. 3:19-CV-0736 (AAT), 2020 WL 1640425, at *1 (M.D. Tenn. Apr. 2, 2020) (noting that Spotify USA Inc. "is a New York-based company

incorporated in Delaware and wholly owned by a Swedish corporate parent."); *Lulu Enters., Inc. v. N-F Newsite, LLC*, No. 5:07-CV-0347-D (TWB), 2007 WL 3101011, at *1 (E.D.N.C. Oct. 19, 2007) (noting that Lulu Enterprises, Inc., operates the website "Lulu.com" and is a Delaware corporation with its headquarters in Morrisville, North Carolina); *Goryl v. Tidal Software, Inc.*, No. H-07-2079 (SL), 2007 WL 2471469, at *2 n.18 (S.D. Tex. Aug. 27, 2007) ("The parties do not dispute that Tidal [Software, Inc.], as a California corporation, is a citizen of California for diversity purposes.").

In addition, Plaintiff seems to seek at least $1 billion in damages. (ECF 1, at 6.) She does not, however, allege any non-conclusory facts in support of that claim.

In sum, Plaintiff does not allege facts sufficient to show that the parties are diverse—that she and all of the defendants named in her original complaints are not citizens of the same State. In addition, she has not alleged non-conclusory facts showing that her claims under state law satisfy the jurisdictional amount in controversy for a diversity action—an amount in excess of the sum or value of $75,000. Accordingly, to the extent that Plaintiff asserts claims under state law, under the court's diversity jurisdiction, the Court dismisses these claims for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court, however, grants Plaintiff leave to replead her claims brought under state law in an amended complaint in which she alleges facts showing that the court has original diversity jurisdiction of such claims against the defendants named in her amended complaint. If Plaintiff files an amended complaint raising claims under state law under the court's diversity jurisdiction, none of the defendants named in her amended complaint can be a citizen of the same State as her, and she must include non-conclusory facts showing that her claims under state law satisfy the more-than $75,000 jurisdictional amount for a diversity action.

G.   **Plaintiff's motion for an extension of time to file a notice of appeal, motion to proceed IFP on appeal, and application to appeal IFP**

Plaintiff's appeal of the Court's September 26, 2024 order denying her first OTSC was an interlocutory appeal of an order denying an injunction. *See* 28 U.S.C. § 1292(a)(1); *The Res. Grp. Int'l Ltd. v. Chishti*, 91 F.4th 107, 111 (2d Cir. 2024). As mentioned above, the Court of Appeals dismissed Plaintiff's interlocutory appeal effective August 15, 2025. Accordingly, because there is no longer any interlocutory appeal arising from the Court's September 26, 2024 order for Plaintiff to pursue, the Court denies as moot her motion for an extension of time to file a notice of appeal, motion for leave to proceed IFP on appeal, and her application to appeal IFP. (ECF 10-11.)

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). Indeed, the Court of Appeals has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation marks omitted)). Because Plaintiff may be able to allege additional facts to state valid claims, the Court grants Plaintiff 30 days' leave to replead those claims for which the Court has granted her such leave above, in an amended complaint.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order, which will include: (1) the dismissal of Plaintiff's claims under federal law for the

reasons set forth in this order: (2) the alternative dismissal of Plaintiff's claims under state law because the Court declines to consider, under its supplemental jurisdiction, such claims, *see* 28 U.S.C. § 1367(c)(3), or because the court lacks original diversity jurisdiction to consider them, *see* Fed. R. Civ. P. 12(h)(3); and (3) the denial of any pending motions or other requests for relief as moot.

## WARNING

The Court notes that Plaintiff, under the name "Sharon Jeter," is barred, under 28 U.S.C. § 1915(g), from filing any federal civil action IFP while she is a prisoner, unless she is under imminent danger of serious physical injury. *See* Bar Order Under 28 U.S.C. § 1915(g), *Jeter v. CNYPC*, ECF 1:15-CV-6802, 6 (S.D.N.Y. Dec. 7, 2015) (lead action). A prisoner is only barred under Section 1915(g) when, while she has been a prisoner, she has filed three or more previous civil actions or appeals in a federal court that have been dismissed as frivolous, malicious, or for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(g).

It seems that Plaintiff, now that she is no longer a prisoner, has continued to file nonmeritorious civil actions in this court under the names "Sharon Brown," "Sharon L. Brown," and "Sharon Leslie Brown." Some of these actions have been dismissed for lack of subject matter jurisdiction. *See* Order of Dismissal, *Brown v. Columbia Univ.*, ECF 1:25-CV-3213, 6, (S.D.N.Y. June 18, 2025); Order of Dismissal, *Brown v. World Health Org.*, ECF 1:24-CV-7216, 11 (S.D.N.Y. Mar. 7, 2025) (notice of appeal filed Mar. 28, 2025); Order of Dismissal, *Brown v. United Nations*, ECF 1:24-CV-7061, 10 (S.D.N.Y. Feb. 26, 2025), *appeal dismissed*, No. 25-563 (2d Cir. July 31, 2025). She has also filed other actions in this court that have been dismissed as frivolous, and the court has warned her that, if she continues to file nonmeritorious litigation in this court, the court may issue an order barring her from filing new civil actions in this court IFP

without leave of court. Order of Dismissal, *Brown v. Trump*, ECF 1:24-CV-7909, 10 (S.D.N.Y. July 21, 2025); Order of Dismissal, *Brown v. Ventura*, ECF 1:25-CV-3635, 11 (S.D.N.Y. June 20, 2025) (notice of appeal filed June 30, 2025). If Plaintiff is unable to cure the deficiencies in this action that are mentioned above, for which the Court has granted her leave to replead in an amended complaint, it would appear that this action is yet another nonmeritorious civil action that Plaintiff has filed in this court. Accordingly, the Court again warns Plaintiff that, if she continues to file nonmeritorious litigation in this court, the court may issue an order barring her from filing new civil actions in this court IFP without leave of the court. *See* 28 U.S.C. § 1651.

## CONCLUSION

The Court denies Plaintiff's second and third OTSCs. (ECF 9, 12). The Court also denies Plaintiff's motion for an extension of time to file a notice of appeal, motion for leave to proceed IFP on appeal, and her application to appeal IFP as moot. (ECF 10-11.) The Court further dismisses this action for the reasons set forth in this order. The Court, however, grants Plaintiff 30 days' leave to replead certain claims in an amended complaint, as specified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order, which will include: (1) the dismissal of Plaintiff's claims under federal law for the reasons set forth in this order: (2) the alternative dismissal of Plaintiff's claims under state law because the Court declines to consider, under its supplemental jurisdiction, such claims, *see* 28 U.S.C. § 1367(c)(3), or because the court lacks original diversity jurisdiction to consider them, *see* Fed. R. Civ. P. 12(h)(3); and (3) the denial of any pending motions or other requests for relief as moot.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a judgment is entered.

SO ORDERED.

Dated:   October 8, 2025
         New York, New York

                                                     /s/ Laura Taylor Swain
                                                     LAURA TAYLOR SWAIN
                                                 Chief United States District Judge